UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DALE DEBOES,

        Plaintiff,                      Civil Action No. 12-11814

    v.                                District Judge Sean F. Cox
                                        Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION TO
## DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [8] AND
## GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [12]

Plaintiff Dale Deboes appeals Defendant Commissioner of Social Security's ("Commissioner") denial of his applications for disability insurance benefits and supplemental security income. (*See* Dkt. 1, Compl.)  Before the Court for a report and recommendation (Dkt. 2) are the parties' cross-motions for summary judgment (Dkts. 8, 12).  For the reasons set forth below, this Court finds that substantial evidence supports the decision of the Commissioner.  The Court therefore **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Dkt. 8) be **DENIED**, that Defendant's Motion for Summary Judgment (Dkt. 12) be **GRANTED**, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be **AFFIRMED**.

**I. BACKGROUND**

Plaintiff Dale Deboes was 42 years old on the date he alleges he became disabled. (Tr. 101.) Plaintiff attended school through the eighth grade, but is unable to read or write. (*Id*.) Plaintiff previously worked as a fork-lift operator and at a temporary service. (Tr. 16-17.) Plaintiff testified that he could not work due to his illiteracy, vision, gout, and high blood pressure. (Tr. 17.)

**A. Procedural History**

On December 19, 2007, Plaintiff applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") asserting that he became unable to work on June 1, 2001. (Tr. 101-113.) The Commissioner initially denied Plaintiff's disability application on March 25, 2008. (Tr. 34-35.) Plaintiff then requested an administrative hearing, and on February 2, 2010, he appeared via video conference with counsel before Administrative Law Judge Theodore W. Grippo, who considered his case *de novo*. (Tr. 10-33.) Vocational expert Annette Holder also testified at the hearing. (Tr. 32-33.) In an August 6, 2010 decision, ALJ Grippo determined that Plaintiff was not disabled. (*See* Tr. 36-50.) The ALJ's decision became the final decision of the Commissioner on February 22, 2012, when the Social Security Administration's Appeals Council denied Plaintiff's request for review. (Tr. 1-6.) Plaintiff filed this suit on April 23, 2012. (Dkt. 1, Compl.)

**B. Medical Evidence**

On December 21, 2002, state medical examiner Dr. Theodore Tangalos conducted a physical examination of Plaintiff. (Tr. 229-33.) Dr. Tangalos concluded that Plaintiff's chest pain was due to costochondriasis. (Tr. 233.) Plaintiff admitted that after taking a deep breath or stretching out his shoulders, the pain would immediately go away. (*Id*.) Plaintiff's blood pressure was 150/100, and was poorly controlled due to lack of insurance. (*Id*.) Dr. Tangalos examined Plaintiff's feet

2

and noted the appearance of increased arches and bilateral bunions. (Tr. 233.) Dr. Tangalos also noted a mild limp. (*Id.*) Dr. Tangalos noted right eye acuity at 20/30, and the left eye at 20/25. (Tr. 230.) Dr. Tangalos further noted that Plaintiff's eyes were not icteric (jaundiced). (*Id.*) Plaintiff's pupils were equal and reactive to light and accommodation, and his fundus appeared normal. (*Id.*) Dr. Tangalos also noted a left lateral strabismus (crossed-eye condition). (*Id.*) Dr. Tangalos noted that Plaintiff did not use an assistive device for ambulation, and that Plaintiff had no difficulty getting on or off the examination table, heel and toe walking, squatting, or hopping. (*Id.*)

On May 4, 2004, Michigan Disability Determination Services psychologist Margaret Zerba diagnosed Plaintiff as having major depressive disorder, a history of alcohol abuse, and panic disorder without agoraphobia. (Tr. 246.) Dr. Zerba also noted that Plaintiff's feet and legs swelled and that he experienced chronic pain, irregular heart beat, high blood pressure, dizziness, arthritis, gout, back pain, poor vision due to a congenital eye condition, but wore no corrective lenses. (*Id.*) Plaintiff's GAF was assessed at 41. (*Id.*)

On May 8, 2004, state medical examiner Dr. Elisa Foster conducted a physical examination of Plaintiff. (Tr. 247-49.) Plaintiff's blood pressure was 180/110 and he was advised to seek treatment with a primary care physician. (Tr. 249.) Dr. Foster concluded that the primary limiting factor for Plaintiff's employment was his inability to read and write. (Tr. 248.)

On January 3, 2007, M. Khan completed a general medical examination of Plaintiff. Khan indicated that Plaintiff had gout, reduced vision in his left eye, hypertension, and was unable to read and write.[1] (Tr. 251.) Khan also noted a normal examination of Plaintiff's psychiatric and general health. (Tr. 250-51.) Khan noted, however, that Plaintiff had limitations in kneeling and climbing,

---

[1] It is unclear from the report whether M. Khan is male or female.

and that Plaintiff was not physically ready to enter employment or training. (Tr. 251.)

On November 21, 2007, the Michigan Department of Labor & Economic Growth referred Plaintiff to Focused Therapeutic Services ("FTS") to assess his intellectual functioning, academic achievement levels, vocational interests, and emotional status for rehabilitation purposes. (Tr. 264.) It was determined that Plaintiff was functioning at the borderline range of intelligence, "which appear[ed] to be a reliable indicator of his cognitive level." (Tr. 268.) FTS determined that "[Plaintiff] is functionally illiterate and will require assistance in reading job descriptions, completing applications, and following written directions." (*Id*.) Notwithstanding, FTS determined feasible employment options for Plaintiff included: janitorial work, assembly work, bagging/stocking groceries, or warehouse work. (*Id*.)

On February 15, 2008, Michigan Rehabilitation Services closed Plaintiff's case because he did not receive medical clearance from his physician to enter training or work. (Tr. 260.)

On March 24, 2008, Dr. Leonard C. Balunas determined that there was insufficient evidence for Plaintiff's DIB claim. (Tr. 281.) The State also concluded that there was insufficient evidence for the SSI claim due to Plaintiff's failure to return documents. (*Id*; *see also* Tr. 298.) Moreover, Plaintiff's lack of cooperation made it impossible for the State to order a consultative examination. (*Id*.)

### C. Testimony at the Hearing Before the ALJ

#### 1. *Plaintiff's Testimony*

Plaintiff testified that he was unable to read or write. (Tr. 15.) Plaintiff indicated that he could not leave a note for his wife if she was not home and he needed to leave the house. (*Id*.) Plaintiff indicated that his last job was at Power Distributing where he worked as a forklift driver.

(Tr. 16.) After five years, Plaintiff was fired for being unable to do the job. (*Id*.) Plaintiff also testified that he worked briefly for a temporary service. (*Id*.) Plaintiff indicated that in or around 2009 he participated in some job training. (Tr. 16-17.) Plaintiff testified that although he completed his job training, he was incapable of working because he could not read. (Tr. 17.) In addition to his illiteracy, Plaintiff testified that he had additional problems that prevented him from working, including the absence of single-eye vision. (*Id*.) Plaintiff testified that he wore eyeglasses and was under the care of a physician for his eye problems. (Tr. 17-18.) Additionally, Plaintiff testified that he had gout and high blood pressure. (Tr. 17.) Plaintiff indicated that he had gout for approximately 17 years and took medicine for it. (Tr. 18.) Plaintiff indicated that he had suffered with high blood pressure for about 30 years and took medicine for it. (Tr. 19.)

Plaintiff testified that he was able to prepare meals and do a little housekeeping, although he would need to take breaks because he got tired. (Tr. 20.) Plaintiff reported that his gout prevented him from walking too far, and that his feet always hurt. (Tr. 21.) Plaintiff also indicated that he was seeking medical attention for his toes which were always changing colors. (*Id*.) Plaintiff testified that when he was having trouble with his feet he needed to stay in bed, which would range from one to several days per week. (Tr. 22.) Plaintiff testified that friends came to visit him three times per week, but he was not able to drive, grocery shop, shovel snow, mow the lawn, or work outside. (Tr. 23.) Plaintiff also testified that he was able to attend church once per month. (Tr. 26.) When asked why he was incapable of working, Plaintiff indicated that his "body [wouldn't] let [him]." (Tr. 24.) When asked to be more specific, Plaintiff identified the pain in his feet and indicated that chest pain made him short-winded. (Tr. 24.)

5

### *2. Plaintiff's Wife, Sylvia Ann Deboes' Testimony*

At the time of the administrative hearing, Sylvia Deboes had been married to Plaintiff for almost 11 years. (Tr. 26.) Ms. Deboes testified that Plaintiff could not read. (Tr. 26-27.) She also testified that, on a daily basis, she set out Plaintiff's arthritis, blood pressure, and pain medications. (Tr. 27.) She indicated that Plaintiff became drowsy after taking his medications. (Tr. 30.) When Plaintiff had to spend time in bed, Ms. Deboes indicated that he primarily complained of swollen and painful feet. (Tr. 27.) Ms. Deboes indicated that Plaintiff was capable of climbing stairs in their two-story home. (Tr. 31.) She also indicated that when Plaintiff had a severe flare-up in his feet, which was about twice per month, she needed to help Plaintiff get dressed. (*Id.*) Ms. Deboes testified that Plaintiff did not drive because of his vision problems. (Tr. 28.)

### *3. The Vocational Expert's Testimony*

The ALJ solicited testimony from a vocational expert ("VE") to identify Plaintiff's past relevant work. (Tr. 32-33.) The VE testified that Plaintiff previously worked as a forklift operator, which, according to the Dictionary of Occupational Titles, was semi-skilled work (a specific vocational level of 3) at the medium physical demand level. (Tr. 32.)

## II. THE ALJ'S APPLICATION OF THE DISABILITY FRAMEWORK

Under the Social Security Act (the "Act"), Disability Insurance Benefits (for qualifying wage earners who become disabled prior to expiration of their insured status) and Supplemental Security Income "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Social Security regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

At step one, ALJ Grippo found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of June 1, 2001. (Tr. 41.) At step two, he found that Plaintiff had the following medically determinable impairments: hypertension and gout. (*Id.*) The ALJ further concluded that, because Plaintiff's impairments did not significantly limit his ability to

perform basic work-related activities for 12-consecutive months, his impairments were not "severe." (*Id.*)  The ALJ therefore concluded that Plaintiff was not disabled as defined by the Social Security Act.  (Tr. 46.)

### III.  STANDARD OF REVIEW

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole.  *Bass v. McMahon*,

499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247.

## IV. ANALYSIS

Although Plaintiff's motion for summary judgment raises two issues, it is almost entirely devoid of developed legal argument. And this Court is "not obligated to consider unsupported arguments inadequately developed in their briefs." *Lewless v. Sec'y of Health & Hum. Servs.*, 25 F.3d 1049, 1994 WL 201887, at *4 (6th Cir. 1994). This is especially true where, as here, Plaintiff is represented by counsel. Indeed, a plaintiff who briefly recounts an ALJ's findings and only makes a limited statement of law runs the risk of forfeiting those issues. *See Baldwin v. Astrue*, No. 08-395, 2009 WL 4571850 (E.D. Ky. Dec. 1, 2009) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). This Court has, nevertheless, reviewed Plaintiff's abbreviated arguments and, as discussed below, concludes that substantial evidence supports the ALJ's decision.

### A. The ALJ Properly Weighed The Opinion Of M. Khan

Plaintiff argues that ALJ Grippo failed to apply the correct legal standard when evaluating the opinion evidence of "M. Khan." (Pl.'s Mot. Summ. J, at 4-5.) More specifically, Plaintiff contends that ALJ Grippo improperly rejected Khan's opinion as not being from a physician without

9

first seeking clarification. (*Id.* at 4.) Plaintiff contends that ALJ Grippo should have accorded Khan's opinion full weight in determining whether Plaintiff was capable of performing substantial gainful employment. (*Id.*)

Here, the only evidence submitted by Khan is a three-page general medical examination report. (Tr. 250-52.) ALJ Grippo gave very little weight to Khan's opinion because:

> First, the record does not indicate if M. Khan is a physician or what his or her medical relationship is with the claimant. Furthermore, the claimant did not report receiving treatment or medications from anyone named M. Khan and the record contains no treatment notes from a person with this name. (*See* 5E at 5-8; 13E at 1-3; 12F at 2-17). Second, M. Khan did not cite significant clinical and diagnostic studies to support the opinion and provided an opinion that is inconsistent with the record as a whole. Finally, M. Khan's opinion that the claimant was "unemployable" is inconsistent with his own functional capacity assessment of a limited light functional capacity. M. Khan's opinion is also generally inconsistent with the claimant's reported work history and credible activities of daily living.

(Tr. 45.)

Upon reviewing Khan's medical examination report, the Court reaches a conclusion consistent with the ALJ's. First, nothing in the report indicates that Khan is a physician. *See* S.S.R. 06-04p, 2006 WL 2329939, at *2 (explaining that only opinions authored by "acceptable medical source[s]" can trigger the treating-source rule). Second, Plaintiff did not attempt to show in his brief, and the record does not reveal, that Khan had established a treating-physician relationship with Plaintiff. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006) ("[A] plethora of decisions unanimously hold that a single visit does not constitute an ongoing treatment relationship. . . . Indeed, depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship."); 20 C.F.R. § 404.1527(c)(2) ("[T]reating sources . . . are likely to be the medical professionals most able to

provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from . . . reports of individual examinations, such as consultative examinations or brief hospitalizations."). The Court also notes that Plaintiff was represented by counsel at the administrative level, yet no treatment notes from Khan were submitted. (Tr. 45.) Further, Plaintiff did not testify that he was treated by Khan, and his disability report contains no reference to him/her. (Tr. 171.) Importantly, the state agency followed up with Khan's report, but was informed that no other information was available. (Tr. 298.) Under these circumstances, this Court concludes that the ALJ properly weighed Khan's opinion.

Moreover, while the regulations detail how ALJs can resolve ambiguities in the medical record, including re-contacting a medical source, this situation is limited to when an ALJ is unable to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1512(e).

Accordingly, the Court finds no error in the ALJ's treatment of Khan's opinion.

### B.     The ALJ Was Not Required To Order A Consultative Examination

Plaintiff also argues that the case should be remanded for further record development because the Social Security Administration, during the assessment process, failed to evaluate his cognitive functioning and failed to determine whether there was an organic basis for his cognitive defects. (Pl.'s Mot. Summ. J, at 5.) Plaintiff cites *Marcum v. Comm'r Soc. Sec.*, 205 F.3d 1341 (table) (6th Cir. 2000) for support. However, the Sixth Circuit in *Marcum* declined to address a similar challenge where the claimant failed to raise it during the administrative proceeding. *See Marcum*, 205 F.3d at *4. Similarly here, there is no evidence that Plaintiff, despite being represented by counsel, raised this argument during the administrative proceeding.

11

And, even if Plaintiff had timely raised the challenge, the case relied upon by Plaintiff holds that a claimant must produce sufficient evidence of a mental impairment that prevents the claimant from working before an ALJ is required to obtain an expert's opinion. *Marcum*, 205 F.3d 1341, at *4; *see also Robinson v. Barnhart*, 124 F. App'x 405, 411 (6th Cir. 2005). In *Marcum*, the Sixth Circuit framed the inquiry as follows: "[W]hat quantum of evidence of a possible mental impairment is necessary to invoke the requirements of 42 U.S.C. § 421(h) and 20 C.F.R. § 404.1520(a)[?]" In turn, section 421(h) provides:

> An initial determination under subsection (a), (c), (g), or (i) of this section that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Commissioner of Social Security has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.

The plaintiff in *Marcum* identified a physician's report of depression and a prescription for an anti-depressant. *Id*. He additionally testified to being "depressed a lot." *Id*. The Sixth Circuit nonetheless concluded that this evidence was insufficient "to raise an inference of a medical impairment." *Id*. The Court therefore held that the ALJ did not err by failing to order a medical expert to evaluate the plaintiff's mental condition. *Id*.

Here, Plaintiff claims that when he had his psychiatric assessment, there was a complete failure to assess his cognitive functioning. (Pl's Mot. Summ. J, at 5.) Plaintiff claims that this is material because he is unable to read or write. (*Id*.) Not unlike the plaintiff in *Marcum*, however, Plaintiff does not identify evidence of a mental impairment that he presented to the ALJ that would be sufficient to invoke § 421(h). And it is not the duty of this Court to construct Plaintiff's argument on this point. Nevertheless, this Court notes that a State psychologist consulted at the agency level

determined, for purposes of DIB, that there was insufficient evidence to complete the PRTF. (Tr. 281.) Because Plaintiff's insured status ended in December 2006, the State could reasonably conclude that obtaining a consultative examination in March 2008 would not materially aid in the process of determining whether Plaintiff was disabled prior to the date last insured. With respect to the SSI application, the state agency determined that no PRTF was completed because Plaintiff failed to cooperate. (*Id*.) In particular, Plaintiff failed to return the necessary paperwork required for the agency to order a consultative examination or otherwise proceed. (Tr. 298.)

Plaintiff indicates that the ALJ should have determined whether there was an "organic" basis for his cognitive deficiencies, yet he does not indicate what type of testing should have been ordered, or discuss how that testing would be relevant to the ultimate disability determination. The only evidence in the record concerning a possible mental limitation is the consultative report conducted by the Michigan Department of Labor. (Tr. 264-69.) That report, however, also indicates that Plaintiff is capable of janitorial work, assembly work, grocery work, and warehouse work. (Tr. 268.) Given the standard set forth in *Marcum* that requires a claimant to produce evidence of an impairment that prevents him from working, this Court concludes that the ALJ did not err in not ordering an consultative examination.

## V.  CONCLUSION AND RECOMMENDATION

For the reasons set forth above, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Dkt. 8) be **DENIED**, that Defendant's Motion for Summary Judgment (Dkt. 12) be **GRANTED**, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be **AFFIRMED**.

13

**VI. FILING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

                s/Laurie J. Michelson  
                LAURIE J. MICHELSON  
                UNITED STATES MAGISTRATE JUDGE

Dated: March 28, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 28, 2013.

                s/Jane Johnson  
                Deputy Clerk